IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,
    Plaintiff,

v.                                                                 Civil Action No. 3:12-cv-059-JAG

COMMONWEALTH OF VIRGINIA,
    Defendant.

## ORDER

The Court has set a hearing on April 23 and 24, 2019, to begin the process of terminating this case. At the conclusion of the hearing, the Court will a) determine whether the Commonwealth has complied with some or all of the terms of the consent decree in this case, b) identify which terms of the decree the Commonwealth has not complied with, and c) state in precise measurable terms what the Commonwealth must do to comply with each remaining provision of the decree.

The consent decree will terminate by June 30, 2021, unless the Commonwealth has not complied with its terms. As often pointed out to the parties, the Court faces difficulties in determining compliance with the terms of the decree. Many parts of the decree contain terms that, while possibly understood by professionals who deal with people with disabilities, provide scant guidance to the Court. For instance, Paragraph III.C.5.b.1 requires the Commonwealth to assemble teams of case managers who know how to develop plans "that are individualized, person-centered, and meet the individual's needs." (Dk. No. 112, at 21.) Paragraph III.C.6.b.i.A mandates that Virginia hire crisis team members "adequately trained to address" crises. (*Id.* at 22.) Paragraph III.C.7.b.i.B.2 requires the state to adopt targets to "meaningfully" increase employment opportunities for people with disabilities. (*Id.* at 25.) Paragraph IV.C.3 says that the Commonwealth must "identify gaps in care and address proactively any such gaps" for people

discharged from training centers. (*Id.* at 32.) While the Court has a general idea about "person-centered" plans, "adequate" training, "meaningful" increases, "gaps" in care, and "proactive" attacks on gaps, it has no measurable way to decide whether the Commonwealth has met these requirements. The decree has dozens of similar terms.

To assist the Court at the hearing in April, the parties must identify the precise things the Commonwealth must do to comply with the decree. The parties, therefore, must provide the Court an agreed list of all provisions of the decree with which the Commonwealth has complied. If the parties dispute whether the Commonwealth has complied with certain terms of the agreement, they must identify those terms. Both the United States and the Commonwealth must state in measurable terms what the Commonwealth has to do to comply with the decree.

The parties may provide evidence, including expert testimony, to demonstrate a) the generally accepted meaning of the specialized language in the decree, b) compliance or non-compliance with the provisions of the decree, and c) the precise things the Commonwealth must do to comply with the decree. The Court urges the parties to agree, to the extent possible, about what has been done and what needs to occur.

The Court intends to use its determinations from the forthcoming hearing as a measuring stick to decide whether the Commonwealth has met its duties. The parties, therefore, must explain in detail the Commonwealth's duties under the decree. For instance, with respect to Paragraph III.C.6.b.i.A, the parties must demonstrate what constitutes adequate training to address crises, which could mean such things as obtaining a certificate of EMS training, completing a specified course in crisis care for people with disabilities, or something else. (*See* Dk. No. 112, at 22.) In this same area, the parties must demonstrate how many trained providers the Commonwealth must provide, and where the providers should be stationed in the state.

The Court imposes the following procedural rules for the hearing:

1. <u>Agreed Compliance List</u>. By April 12, 2019, the parties shall stipulate to a list of provisions of the decree with which the Commonwealth has complied, and file the list with the Court. The Court will deem that the Commonwealth has satisfied its duties under the decree with respect to anything on this list.

2. <u>United States' Noncompliance Contentions</u>. By April 12, 2019, the United States shall provide the Court and Commonwealth a list of the provisions of the decree with which it contends the Commonwealth has not complied. This list shall spell out exactly what the Commonwealth must do to comply.

3. <u>Commonwealth's Compliance Contentions</u>. By April 17, 2019, in response to the United States' Noncompliance Contentions, the Commonwealth shall provide the Court and the United States a list of the provisions of the decree it believes it has met. The Commonwealth shall spell out exactly how it has complied.

4. <u>Conduct of the Hearing</u>.

    a. Each party may make an opening statement no longer than thirty minutes in length.

    b. The Commonwealth shall present evidence to support its compliance contentions.

    c. The United States shall present evidence to support its noncompliance contentions.

    d. The evidence in the case may consist of oral testimony, written declarations or affidavits, documents, or other probative evidence. The Court cautions

the parties that oral testimony has greater weight than affidavits and declarations.

\* \* \*

This Order insists on detailed analysis of the Commonwealth's obligations and performance under the consent decree. By the date of the hearing in this case, the parties will have worked on this case for six years and eight months. By now they should know what they have done, what they agree or disagree about, and what they expect to be done in the future.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 12 Mar. 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

4