# disABILITY LAW CENTER

**OF VIRGINIA**

**Protection & Advocacy for Virginians with Disabilities**

1512 Willow Lawn Drive, Suite 100, Richmond, VA 23230
www.dLCV.org

T:800-552-3962
F:804-662-7431

May 19, 2026

Donald J. Fletcher, Independent Reviewer
donaldfletcherva@gmail.com

RE: DBHDS Failing to Use Sanction Authority for DD Providers Whose Negligence Contributes to Avoidable Deaths

Dear Mr. Fletcher,

The disAbility Law Center of Virginia (dLCV) is deeply concerned by the Commonwealth's assertion that it cannot fully use its existing sanction authority without significant new appropriations from the General Assembly.[1][2] In December 2025, dLCV released findings from a multiyear investigation into unexpected deaths in developmental disability (DD) services licensed by DBHDS.[3] Our report describes preventable fatalities and recurring breakdowns in emergency response and supervision throughout Virginia's DD provider network. It further documents patterns of regulatory noncompliance, repeat offenders, and the absence of meaningful enforcement consequences.

In nearly half of the deaths we reviewed, provider staff delayed or failed to perform CPR or call 911; in other cases, providers did not adequately supervise individuals with known feeding precautions. Based on these findings, dLCV recommended that DBHDS amend its regulations to require emergency medical drills. We further recommended that the Commissioner issue stringent sanctions whenever life-threatening regulatory violations are identified. State legislators agreed that urgent changes were needed and developed two bills in response to dLCV's report, HB1370 and HB1380.

HB1370 was recently signed into law by the Governor.[4] It directs the DBHDS Board to adopt regulations requiring service providers to conduct regular emergency medical simulations, train employees to recognize and respond when emergency treatment is needed, and ensure that at least one CPR-trained employee is on duty at every location where services are delivered.

---

[1] §37.2-419

[2] https://lis.blob.core.windows.net/files/1115980.PDF

[3] https://www.dlcv.org/wp-content/uploads/2025/12/DD-ID-Deaths-report-December-2025.pdf

[4] https://lis.virginia.gov/bill-details/20261/HB1370

*Member of the National Disability Rights Network*

Unfortunately, HB1380, which would have further directed DBHDS to pursue sanctions already permitted under state law, was killed due to an unreasonably high fiscal estimate attached to it by the state.[5] The Commonwealth has claimed that sanctions would be difficult and costly to implement. Yet enforcing sanctions for serious, life-threatening violations is essential to protecting individuals and meeting ongoing federal oversight obligations. Failing to provide emergency medical treatment, delaying such treatment, failing to call 911 immediately upon discovering a medical emergency, and failing to follow food safety protocols should be addressed as substantial noncompliance and handled accordingly, either with a civil penalty or withholding funds as authorized by Virginia Code.

DBHDS estimates that it would cost them nearly $700,000 a year to penalize providers who violate established regulations, something we believe they are already required to do on the developmental disability side. The Permanent Injunction requires DBHDS to maintain a robust quality management system that identifies system weaknesses, ensures safe service delivery, and prevents harm to individuals with disabilities. It also sets clear expectations for compliance monitoring and corrective action when providers fall short. As paragraph 64 of Permanent Injunction states, "DBHDS shall...implement processes to identify and where possible, prevent and mitigate risks of future harm. ECF 554 at 21. As DBHDS acknowledges, the plain meaning of this statute requires that DBHDS develop processes to sanction problematic providers and deter providers from future violations.

For deaths specifically, the Permanent Injunction requires DBHDS to take prompt action, including corrective action plans (CAPs) and "further actions as warranted," when provider conditions contribute to avoidable deaths. But CAPs have proven ineffective for many providers. For example, one provider in our investigation sample was linked to four separate deaths, receiving citations for serious violations necessitating CAPs each time. The provider violated the licensing regulation requiring adherence to its own policies 26 times, often by failing to respond appropriately to unresponsive individuals. Shockingly, the same provider violated the regulation requiring staff to maintain a working knowledge of each person's service plan, including health and safety protocols, 38 times in a single year. This is a glaring example of DBHDS failing to take "further actions as warranted."

Importantly, state officials have acknowledged that sanctions could effectively influence DD provider compliance with existing regulations. In the Fiscal Impact Statement for HB1380, the Department notes, "It is possible that the number of sanctions in successive years will decline as providers change practices to avoid the sanction process."

The Department's failure to meaningfully utilize its enforcement authority undermines federal mandates and perpetuates a regulatory system that lacks accountability for the most serious harms. HB1380's fiscal impact statement claims that imposing sanctions for dangerous neglect would create workload pressures because of the legal time required for each case. Yet it also notes that, had the bill passed, more than 1,500 cases would likely have met criteria for sanctions or civil penalties in the first year alone. Such a high number of sanctionable violations demonstrates that dangerous conditions are widespread.

With or without legislative action, it is imperative that DBHDS exercise stronger accountability measures immediately, including the imposition of serious sanctions on noncompliant providers. The burden of DBHDS's inaction falls disproportionately on individuals who often cannot protect themselves. When

---

[5] https://lis.virginia.gov/bill-details/20261/HB1380

lives are at stake, the cost of inaction is substantially higher than the modest investment needed to promote preparedness and accountability.

Sincerely,

Rebecca Herbig
Legal Director
disAbility Law Center of Virginia

CC: Copy electronically filed